**IN the INTEREST OF H.B.C., A Minor Child**

**No. 06-15-00092-CV**

Court of Appeals of Texas, Texarkana.

Submitted: December 28, 2015

Decided: January 6, 2016

Don Biard, McLaughlin, Hutchison & Biard, LLP, Paris, TX, for appellant.

Edward D. Ellis, Ellis & Tidwell, LLP, Sydney Young, The Law Offices of Sydney Young, Paris, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Leslie Hall, who had previously been appointed the managing conservator of her ten-year-old granddaughter, Heather Carol,[1] brought an action to terminate the parental rights of the child's parents, Josh Carol (Leslie's son) and his wife, Lisa Carol, as a predicate to Hall's adoption of the child. On September 30, 2015, a little over

---

1. To protect the confidentiality of the child involved, this Court will refer to all involved parties by fictitious names. *See* Tex.R.App. P. 9.8(b)(C)(2).

three months after the suit was instituted, the trial court entered an order terminating Lisa's and Josh's parental rights and granting Hall's petition for adoption.[2] Because only Lisa (and not Josh) has filed an appeal, this opinion centers upon the evidence pertaining to the termination of Lisa's parental rights.

The trial court found (1) that Lisa "knowingly engaged in criminal conduct that resulted in her conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition was filed" and (2) that termination of the parent-child relationship was in Heather's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q), (2) (West 2015).

On her appeal, Lisa argues that the evidence is legally and factually insufficient to support either the sole statutory ground for termination or the trial court's finding regarding the best interest of the child. She also complains that the trial court erred in excluding evidence concerning her eligibility for parole. We find that the termination of Lisa's parental rights (both as resting upon a finding regarding the statutory ground for termination and the finding regarding the child's best interest) is supported by legally and factually sufficient evidence and that Lisa failed to preserve her last point of error. Accordingly, we affirm the trial court's judgment.

## I. Factual Background

Heather was born in Hall's home and had lived there all of her life. Josh and Lisa also lived with Hall until 2008, when they were jailed for having committed drug-related offenses. Lisa testified that she (1) was arrested for manufacturing methamphetamine within a school zone in 2008, when Heather was three years old, (2) received deferred adjudication community supervision for that offense, (3) was placed into a drug treatment facility in November or December 2009, and (4) remained in the drug treatment facility until October 2010, when Heather was five years old.

Hall stated that she had been taking care of the child since she was three years old and that Lisa had "[v]ery little" involvement in her life. She also testified that after Lisa's release from the treatment facility, she moved into an apartment near Hall's home, but resumed drinking alcohol and using drugs during that time. According to Hall, Lisa "would come over to the house and see [Heather] some." Hall explained further, however, "[I]t may be a couple of weeks we didn't see [Lisa] and there may be some days that she was in and out of the house four or five times a day." Hall testified that although Lisa would visit the child and might have helped her with homework, she was cautious of leaving Heather alone with Lisa. Hall opined that Lisa was simply incapable of dependably assuming the responsibility of being a parent. Hall testified that Josh and Lisa had engaged in a physical altercation in the presence of the child in March 2014 and that the child had neither seen her parents since that incident nor desired to be with them.

Lisa's testimony conflicted with that of Hall because she testified that after her release from a drug treatment facility, Lisa saw the child every day after work, took her to gymnastics, did homework, gave her a bath, and got her ready for bed. Lisa stated that she had kept Heather on her own many times and claimed that she was being "pushed away" by Hall.

---

**2.** *See* Tex. Fam.Code Ann. § 162.016 (West 2014).

Lisa was again arrested in October 2014. After a trial court determined that Lisa had violated the terms and conditions of her community supervision, she was adjudicated guilty of the 2008 drug offense and was sentenced to four years' imprisonment. As a result of Lisa's four-year sentence, Hall filed suit to terminate her parental rights to Heather under Section 161.001(b)(1)(Q).

## II. Sufficient Evidence Supports the Statutory Ground for Termination of Lisa's Parental Rights

■ "[S]ection 161.001(1)(Q) of the Texas Family Code applies prospectively." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex.2006) (per curiam). " 'Thus, if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected.' " *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003)). Lisa argues that the evidence is legally and factually insufficient to support this ground of termination.

### A. Standard of Review

■ The United States Supreme Court has acknowledged that the right of a parent to maintain custody of and raise her child "is an interest far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The Texas Supreme Court agrees with this assessment and has held that a parent's interest in maintaining custody of and raising her child is paramount. *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex.2002); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985); *In re G.M.*, 596 S.W.2d 846 (Tex.1980). " 'The natural right existing between parents and their children is of constitutional dimensions.' " *In re L.E.S.*, 471 S.W.3d 915, 919 (Tex.App.–Texarkana 2015, no pet.) (quot-

ing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.' " *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). " 'Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial.' " *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex.2014)). "This Court is therefore required to 'engage in an exacting review of the entire record to determine if the evidence is ... sufficient to support the termination of parental rights.' " *Id.* at 919–20 (quoting *A.B.*, 437 S.W.3d at 500). " ' "[I]nvoluntary termination statutes are strictly construed in favor of the parent." ' " *Id.* at 920 (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex.App.–Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

■ "In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex.2012)). " 'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.' " *Id.* (quoting Tex. Fam.Code Ann. § 101.007 (West 2014)); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex.2009). "This standard of proof necessarily affects our review of the evidence." *L.E.S.*, 471 S.W.3d at 920.

■ "In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction

that the grounds for termination were proven." *Id.* (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.–Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

▆▆▆▆ "In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex.2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine ' "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the .... allegations." ' " *Id.* (quoting *H.R.M.*, 209 S.W.3d at 109; *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). " 'If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.' " *L.E.S.*, 471 S.W.3d at 920 (quoting *J.F.C.*, 96 S.W.3d at 266). " '[I]n making this determination,' we must undertake ' "an exacting review of the entire record with a

healthy regard for the constitutional interests at stake." ' " *Id.* (alteration in original) (quoting *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26)).

## B. Analysis

▆▆▆▆ In order to obtain a finding under ground Q, Hall was required to establish that Lisa knowingly engaged in criminal conduct that resulted in her "(i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition," which was June 24, 2015. Tex. Fam.Code Ann. § 161.001(b)(1)(Q).

At trial, the evidence demonstrated that Lisa was arrested December 12, 2008, for manufacturing more than four ounces but less than 200 grams of methamphetamine in a drug-free zone. Arising from this charge, Lisa was originally placed on deferred adjudication community supervision for a period of seven years. However, because she violated the terms and conditions of her community supervision in October 2014, Lisa was convicted of the offense and was sentenced to four years' imprisonment. The judgment convicting Lisa lists April 20, 2015, as the date that sentence was imposed. Lisa introduced a printout from the Texas Department of Criminal Justice website, which showed that her projected release date was February 3, 2018. She also testified that she was going to receive one year of credit for the time she had spent in a drug treatment facility.[3]

---

**3.** The following exchange occurred during Lisa's direct testimony:

> Q. Is there any jail time that you have not been given credit for that you believe you're entitled to?
> A. Yes, sir.
> Q. How much?

> A. All the—the time that I was in treatment.
> Q. How long was that again?
> A. I want—it was either the end of November or the first—or sometime in December [2014].
> Q. And are you working on clearing that up with the Court?

Although Lisa was under a court order to pay $227.00 per month in child support to Hall beginning on June 1, 2014, the evidence at trial established that Lisa had paid none of the ordered child support payments. Lisa testified that she had been incarcerated since October 2014, had not made any money while in prison, had no bank account, and had no access to money.

■■■ Lisa argues that this evidence is insufficient to establish ground Q because "[i]ncarceration alone does not show inability to care for a child." *In re S.R.*, No. 13-15-00114-CV, 2015 WL 3657747, at *2 (Tex.App.-Corpus Christi June 11, 2015, no pet.) (mem.op.); *In re Caballero*, 53 S.W.3d 391, 395-96 (Tex.App.-Amarillo 2001, pet. denied). However, "when the party seeking termination has established that the incarcerated parent will remain in confinement for the requisite period, the parent must then produce some evidence as to how [s]he would provide or arrange to provide care for the child during h[er] incarceration." *S.R.*, 2015 WL 3657747, at *2 (citing *Caballero*, 53 S.W.3d at 395-96; *Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex.App.-El Paso 2004, no pet.)). "If the parent meets that burden of production, the [party seeking termination] then has the burden of persuasion to show that the parent's provision or arrangement would not satisfy the parent's duty to the child." *Id.* (citing *In re E.S.S.*, 131 S.W.3d 632, 639-40 (Tex.App.-Fort Worth 2004, no pet.); *Caballero*, 53 S.W.3d at 396). "In other words, the [party seeking termination] must then persuade the trial court that the stated arrangements would not satisfy the parent's duty or obligation to the child." *Id.* (citing *Hampton*, 138 S.W.3d at 567).

The trial court heard evidence that Lisa's projected release date was February 3, 2018, and uncontested testimony established that Lisa was unable to financially care for Heather. Apart from leaving Heather with Hall (who was under no agreement with Lisa to assume the responsibility to care for Heather on Lisa's behalf), Lisa put forth no plan to arrange for the child's care. *See S.R.*, 2015 WL 3657747, at *2 (citing *H.R.M.*, 209 S.W.3d at 110) ("[T]here must be an agreement between the parties to care for the child before the incarcerated parent can show that he has the ability to care for the child through the support of others."). As pointed out previously, although Lisa was ordered to pay child support to Hall, the evidence at trial established not only that Lisa had failed to do so in the past, but also that she could not do so in the future. Hall testified that due to her life choices and her sporadic availability, Lisa had "[v]ery little" involvement in Heather's life. According to Hall, Lisa was not ready to assume the role of parent.

Considering all of the evidence in the light most favorable to the finding of termination, we conclude that a reasonable fact-finder could have formed a firm belief that Lisa knowingly engaged in criminal conduct that resulted in her imprisonment

A. I'd written the Court once. They didn't—they didn't really say anything about my treatment time. They gave me credit from October of 2014 till—till the day I signed in April—April 20th, but not my treatment time, and [district attorney] Gary [Young]—the day in court that I signed on April 20th, that was my understanding, that was one of the reasons I went ahead and signed was that I would get that treatment time because I completed that successfully and it was a condition of my probation.

Q. Gary Young told you you'd get that time?

A. Yes, sir.

Q. Okay. And that's about a year, right?

A. Yes, sir.

for a conviction of an offense and her inability to care for Heather until June 24, 2017. Accordingly, we find the evidence legally sufficient to support the statutory ground for termination of Lisa's parental rights.

In conducting our factual sufficiency review, we note that Lisa testified that she was going to receive one year of credit for the time she had spent in a drug treatment facility. Article 42.03, Section 2 of the Texas Code of Criminal Procedure states,

> In all criminal cases the judge of the court in which the defendant is convicted shall give the defendant credit on the defendant's sentence for the time that the defendant has spent:
>
> . . . .
>
> (2) in a substance abuse treatment facility operated by the Texas Department of Criminal Justice ..., or another court-ordered residential program or facility as a condition of deferred adjudication community supervision granted in the case if the defendant successfully completes the treatment program at that facility....

Tex.Code Crim. Proc. Ann. art. 42.03, § 2(a) (West Supp.2015). Lisa claimed that she successfully completed the drug treatment program and that the district attorney had told her that she would "get that time." Thus, there was conflicting evidence regarding Lisa's projected date of release from prison.[4] Certainly, the trial court could have believed Lisa's testimony. However, without any further proof, the trial court, as fact-finder, was free to dis-

believe Lisa's testimony that her discharge from the drug treatment facility was due to her successful completion of the program. Therefore, we find that the trial court's ground Q finding was supported by factually sufficient evidence.

### III. Best–Interest Finding is Also Supported by Legally and Factually Sufficient Evidence

■ "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13–12–00612–CV, 2013 WL 782692, at *7 (Tex.App.–Corpus Christi Feb. 28, 2013, pet. denied) (mem.op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex.2006) (per curiam)). "Termination ' "can never be justified without the most solid and substantial reasons." ' " *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex.App.–Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976) (quoting *State v. Deaton*, 93 Tex. 243, 54 S.W. 901, 903 (1900))).

■ In determining the best interest of the child, courts consider the following *Holley* factors:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the

---

4. Lisa also argues that the trial court failed to consider her eligibility for parole. However, Lisa was convicted of manufacturing methamphetamine in a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.134 (West Supp.2015). Section 508.145 of the Texas Government Code, which discusses eligibility for release on parole, states, "An inmate serving a sentence for which the punishment is increased under Section 481.134, Health and Safety Code, is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals five years or the term to which the inmate was sentenced, whichever is less." Tex. Gov't Code Ann. § 508.145(e) (West Supp.2015).

home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* at 819 (citing *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976)); *see In re E.N.C.,* 384 S.W.3d 796, 807 (Tex.2012); *see also* TEX. FAM.CODE ANN. § 263.307(b) (West Supp.2015).

Heather did not testify at trial. However, Hall testified that Lisa's interactions with Heather were sporadic in nature and that Lisa took very little care of Heather. Hall testified that Josh and Lisa had gotten into a physical altercation in front of the child in March 2014 and that the child neither had seen Lisa since that incident nor wanted to be with her. We find that the first *Holley* factor weighs in favor of termination.

Heather was approximately ten years old at the time of the termination hearing. The emotional and physical needs of the child at the time of trial and in the future are great. As a result of her decision to manufacture methamphetamine, Lisa was absent from Heather's life when the child was between the ages of three and five. Although Lisa testified that she took care of Heather every day after her release from the drug treatment facility, Hall disputed this, testifying that Lisa continued to use drugs and would be absent from the child for weeks at a time. Lisa's actions caused Hall to become the child's managing conservator. Even though Lisa lived near Hall's home (where the child was residing) and was not arrested for violation of her community supervision conditions until October 2014, she had not seen Heather after March 2014. The trial court heard evidence that the child had been in counseling for two years, but was currently doing better. Lisa had not been able to pay court-ordered child support, even pri-

or to her incarceration. Due to her incarceration, Lisa continued to be unable to provide for the child. " 'A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.' " *In re Z.M.,* 456 S.W.3d 677, 689 (Tex.App.–Texarkana 2015, no pet.) (quoting *In re J.T.G.,* No. 14–10–00972–CV, 2012 WL 171012, at *17 (Tex. App.–Houston [14th Dist.] Jan. 9, 2012, pet. denied) (mem.op.)). We find that the second *Holley* factor weighs in favor of termination.

As to the third and fourth *Holley* factors, " '[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct.' " *Id.* (quoting *In re I.R.K.-N.,* No. 10–13–00455–CV, 2014 WL 2069281, at *7 (Tex.App.–Waco May 15, 2004, pet. denied) (mem.op.) (citing *Williams v. Williams,* 150 S.W.3d 436, 451 (Tex.App.–Austin 2004, pet. denied); *Ray v. Burns,* 832 S.W.2d 431, 435 (Tex.App.–Waco 1992, no writ) (" 'Past is often prologue.' ")). The trial court heard that Lisa had a substance abuse problem, that she had manufactured methamphetamine in Hall's home while the child was living there, and that she continued to abuse substances after her release from a drug treatment facility in 2010. Hall testified that Lisa was voluntarily absent from Heather's life due to her drug addiction, spent little time with Heather, and was not capable of assuming the responsibility of being a parent. We find that the third and fourth *Holley* factors weigh in favor of termination.

Next, the trial court heard that there were drug intervention programs that could have assisted Lisa, but that Lisa had previously returned to using drugs after her release from a drug treatment program. We find that the fifth *Holley* factor weighs in favor of termination.

Lisa testified that she planned to make Heather her focus after she had been released from incarceration. Despite making this claim, Lisa did not testify about where the child would live or whether she would be able to support the child. Hall, a nurse at Paris Regional Hospital, testified that the child had been living with her since she was born and that she had been financially providing for the child. Hall, who is sixty-five years old, testified that she wanted to adopt Heather, in part because the child would be able to receive Social Security benefits if something untoward were to happen to her. Hall further testified that other family members, who were also in the nursing field, were willing to take care of and provide for Heather should Hall become unable to do so. We find that the sixth and seventh *Holley* factors weigh in favor of termination.

As to the eighth and ninth *Holley* factors, Lisa's history of drug abuse, the periods of her absence from Heather's life, her sporadic interactions with her child, her inability to financially provide for her child, and the physical fight in front of her child in which she had engaged indicated that the existing parent-child relationship was far from a proper one. Although Lisa used her past addiction to drugs and the resulting periods of her incarceration as an excuse for some of her acts or omissions, her relationship with Heather when she was released from confinement suggested that the parent-child relationship was not proper. We find that the eighth and ninth *Holley* factors weigh in favor of termination.

Considering the *Holley* factors, and in light of all of the evidence, we find that the trial court reasonably could have formed a firm belief or conviction that termination of Lisa's parental rights was in Heather's best interest. Therefore, we conclude that the evidence was both legally and factually sufficient to support the best-interest finding.

## III. Lisa Failed to Preserve Her Last Issue for Review

In her last point of error, Lisa argues that the trial court erred in the rulings contained in the following excerpts because her parole eligibility was relevant to the court's ground Q determination: [5]

Q. Okay. What—do you know when you're supposed to get out of prison?

[By Counsel for Hall]: Objection to relevancy, Your Honor.

. . . .

My objection, it's not relevant. That the statute says if they receive a sentence of two years or more, that's grounds for termination.

[By Counsel for Lisa]: That's an incorrect reading of the statute, Judge. As I've argued before, probation elig— eligibility within two years—

THE COURT: Parole eligibility.

[By Counsel for Lisa]: Parole el— sorry, parole eligibility.

THE COURT: I'm going to—I'm going to sustain the objection because speculation as to the date that parole may or may not be achieved.

Q. Do you have a projected release date?

---

**5.** The Texas Supreme Court has written,
We recognize that a two-year sentence does not automatically meet subsection Q's two-year imprisonment requirement. In some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. A parent sentenced to more than two years might well be paroled within two years. Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years.
*In re H.R.M.*, 209 S.W.3d 105, 108–09 (Tex. 2006) (per curiam); *but see* Tex. Gov't Code Ann. § 508.145(e).

[By Counsel for Hall]: Same objection, Your Honor. Speculation.

A. (By the Witness) As far as I know my projected—

THE COURT: Hold on.... I'm going to sustain the objection.

....

THE COURT: For the same reason, that it calls for speculation. No one has any idea what the Board of Pardons and Paroles is or is not going to do.

We find that Lisa has failed to preserve any complaint regarding the exclusion of her testimony on this matter.

"To challenge the exclusion of evidence, a party must: ... if the court rules the evidence inadmissible, make a record, either through an informal offer of proof or a formal bill of exceptions, of the evidence the party desires admitted." *Culver v. Culver*, 360 S.W.3d 526, 531 n. 9 (Tex. App.–Texarkana 2011, no pet.) (citing TEX. R. APP. P. 33.2; TEX. R. EVID. 103). The questions asked of Lisa referenced her projected release date. The trial court heard that Lisa's projected release date was February 3, 2018. On appeal, Lisa argues that she was attempting to testify that she would be released at some other date based on her alleged eligibility for parole. However, there was no evidence, by offer of proof or otherwise, that Lisa would or could be released on a date other than February 3, 2018. Accordingly, she has failed to preserve any complaint that the trial court erred in excluding evidence of a release date other than February 3, 2018. We overrule Lisa's last point of error.

## IV. Conclusion

We affirm the trial court's judgment.