

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00464-CV
_____

IN THE INTEREST OF A.I.F., A MINOR CHILD

_____

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10215, Honorable Stuart Messer, Presiding

_____

May 17, 2018

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

In this private termination case, appellant R.F. appeals the trial court's final order adjudicating his parentage and terminating his parental rights to A.I.F., a child born of his relationship with appellee B.F.[1] We will overrule each of appellant's issues and affirm the trial court's final order.

---

[1] To protect the child's privacy, we will refer to the child's mother as B.F. and to the child as A.I.F. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b).

Background

A.I.F. was born in June 2012. During final hearing testimony, appellant agreed that he is the father of A.I.F., she is his daughter, and he did not want his parental rights with A.I.F. terminated. At the time of A.I.F.'s birth, according to her mother's testimony, she and appellant were "in a relationship" and living together. She added they ceased living together two to three months after A.I.F.'s birth. Appellant testified he and B.F. separated when B.F. learned he had a daughter only six days younger than A.I.F.

In October 2012, B.F. filed a petition to adjudicate parentage. She alleged appellant was the father of A.I.F. but that the man to whom she was then married was the child's presumed father. After a hearing later that month, the trial court rendered temporary orders which, among other things, named appellant the father of A.I.F., granted him visitation, and ordered that he make child support payments of $178 per month. Appellant also was ordered to participate in a hair-follicle drug test.

B.F. testified that appellant never paid child support and has not financially supported A.I.F. Appellant testified that while he did not pay child support, during periods of visitation he provided diapers and "everything" A.I.F. needed. Appellant also did not take the hair-follicle drug test and the court therefore suspended his visitation in November 2012.

Appellant testified that in early January 2013 he was confined in the county jail for a parole violation and while in custody was served with an indictment charging him with forgery. According to the final hearing evidence, during 2013 he was out of jail most of the time between March 26 and September 24 but paid no child support. On October 9,

2013, appellant was convicted of the forgery charge and sentenced to twenty years' confinement in prison and a fine of $10,000. He remained continuously incarcerated to the time of final hearing.

Appellant testified he has learned advanced computer skills in prison and is studying for certification in Braille translation. He believes the skills he has learned will qualify him, on release from prison, to earn enough income to pay child support for all his children. He has three children in addition to A.I.F. His parents bring his three other children to the prison for visitation. B.F. is on appellant's visitation list and he testified to a desire that she bring A.I.F. to visit.

B.F. amended her petition in February 2015 to seek termination of appellant's parental rights. She alleged three predicate acts under Family Code § 161.001(b)(1)[2] and that termination was in the best interest of A.I.F. Final hearing was before the bench in December 2017. Appellant appeared from prison by telephone. Following the hearing, the trial court rendered a final order adjudicating appellant the father of A.I.F. and terminating his parental rights to the child.

## Analysis

By his first issue, appellant argues that because A.I.F. has a presumed father genetic testing was required before appellant could be adjudicated the child's father. Without genetic testing, the argument continues, appellant's parental rights were not established and could not, therefore, have been terminated.

---

[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(F), (I), and (Q) (West Supp. 2017).

3

B.F. sought adjudication of appellant's paternity in 2012. At the final hearing, rather than contesting his paternity, or otherwise arguing that procedurally he could not be adjudicated the father of A.I.F. until he and the presumed father were genetically tested, he agreed in testimony that he is the child's father and that she is his daughter. Only on appeal does appellant complain that the trial court did not follow the proper statutory procedure to adjudicate his parentage. Because his appellate complaint was not presented to the trial court, it was waived. TEX. R. APP. P. 33.1(a). Further, we believe under the doctrine of invited error appellant could not now complain of the trial court's adjudication of his parentage when at the final hearing he claimed to be A.I.F.'s father and actively resisted B.F.'s effort to terminate his parental rights. *See Naguib v. Naguib,* 137 S.W.3d 367, 375 (Tex. App.—Dallas 2004, pet. denied) ("A party to a lawsuit cannot ask something of a trial court and then complain on appeal that the trial court committed error in granting that party's request. This rule is grounded in even justice and dictated by common sense. When the record on appeal conclusively establishes that the trial court entered its judgment in full compliance with appellant's request, all complaints by appellant about the trial court's action in so doing are foreclosed" (citations omitted)).

Moreover, under oath, in open court, appellant admitted parentage. Accordingly, in the final order the trial court found and ordered that he is the father of A.I.F.[3] *See* TEX. FAM. CODE ANN. § 160.623 (West 2014) (in a proceeding to adjudicate paternity, the trial

---

[3] Because this was a non-jury trial in which findings of fact and conclusions of law were neither requested nor filed we presume the trial court made the necessary findings to support its judgment. *Timbercreek Canyon Prop. Owners Ass'n v. Fowler,* No. 07-14-00043-CV, 2015 Tex. App. LEXIS 8460, at *19 (Tex. App.—Amarillo Aug. 12, 2015, no pet.) (mem. op.). And we will affirm that judgment if it can be upheld on any legal theory finding support in the evidence. *Id.; In re N.F.M.,* No. 05-15-01232-CV, 2016 Tex. App. LEXIS 11944, at *11 (Tex. App.—Dallas Nov. 3, 2016, no pet.) (mem. op.).

court shall render an order adjudicating the child to be the child of a man who admits paternity "under penalty of perjury when making an appearance or during a hearing" and if "there is no reason to question the admission"). This was not error. We overrule appellant's first issue.

Sufficiency of Evidence Supporting Predicate Ground and Best Interest Findings

*Applicable Law*

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases of involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002).

Under the Family Code, a trial court may terminate parental rights if the petitioner proves by clear and convincing evidence that the parent committed a predicate act prohibited under section 161.001(b)(1) and termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976).

When performing a legal sufficiency analysis we examine all the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary evidence the factfinder could have

reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals gives due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

*Predicate Ground Finding*

Through his second issue, appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's predicate ground findings under Family Code section 161.001(b)(1)(F), (I), and (Q). Appellant agrees that if he was properly adjudicated to be the child's father, sufficient evidence supports the trial court's finding against him under subsection (Q).

Subsection (Q) provides a trial court may terminate a parent-child relationship on a finding by clear and convincing evidence that a parent has knowingly engaged in criminal conduct that resulted in the parent's conviction for an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition was filed. TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). As noted, in its 2012 temporary order the court found appellant was the father of A.I.F. and ordered him to pay child support. Appellant remained continuously incarcerated from late 2013 to the time of final hearing. B.F.'s amended petition seeking termination under subsection (Q) was filed on February 11, 2015, and the final hearing took place on December 4, 2017. Appellant testified at the final hearing he would "see parole" in May or February but no further evidence supported or corroborated this claim. Finally, appellant acknowledges he did not present any evidence at the final hearing demonstrating how he would provide or arrange to provide for the care of A.I.F. during his incarceration. "[W]hen the party seeking termination has established that the incarcerated parent will remain in confinement for the requisite period, the parent must then produce some evidence as to how [he] would provide or arrange to provide care for the child during [his] incarceration." *In re H.B.C.,* 482 S.W.3d 696, 702 (Tex. App.—Texarkana 2016, no pet.) (quotation marks and citation omitted). We agree with appellant's concession that legally and factually sufficient evidence supports the trial court's predicate ground finding under subsection (Q). Because only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interest, we need not address the sufficiency of the evidence supporting the two other predicate grounds the court found. *See In re A.V.,* 113 S.W.3d 355, 362

(Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.); TEX. R. APP. P. 47.1. We overrule appellant's second issue.

*Best Interest Finding*

Finally, appellant challenges the sufficiency of the evidence supporting the trial court's finding that termination of the parent-child relationship was in the best interest of A.I.F.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). The best interest analysis evaluates the best interest of the child, not that of the parent. *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). Factors for consideration when determining whether termination of parental rights is the best interest of the child include those listed in *Holley*[4] and in Family Code section 153.131(b). *See In re R.R.,* 209 S.W.3d at 116 (citing Family Code Section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

---

[4] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

However, the *Holley* "listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372. "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). Unchallenged predicate ground findings are binding and can support the best interest finding. *In re K.M.,* No. 07-16-00120-CV, 2016 Tex. App. LEXIS 6886, at *6 (Tex. App.—Amarillo Jun. 29, 2016, no pet.) (mem. op.); *In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *In re C.H.,* 89 S.W.3d at 28). The best interest determination may rely on direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

We have already noted appellant's plans to obtain a job based on skills he learned while in prison. He testified on release he expects to begin work in a paint and body shop and live in a house his parents own. He indicated that people are willing to help him get back on his feet.

Criminal conduct, prior convictions, and incarceration affect a parent's life and capacity to effectively parent and may be considered by the trier of fact in making the best interest determination. *In re M.L.C.,* No. 04-17-00459-CV, 2017 Tex. App. LEXIS 12028, at *11 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (mem. op.). At the final

9

hearing, B.F. placed into evidence copies of judgments evidencing appellant's five felony convictions. The documents show that from 2005 through 2008, appellant was convicted for the offenses of tampering with a witness, evading arrest with a vehicle, possession of a controlled substance, and possession of a controlled substance with intent to deliver. In a stipulation to evidence filed in the possession-with-intent-to-deliver case, appellant swore that on November 2, 2007, he knowingly possessed with intent to deliver four grams or more but less than 200 grams of methamphetamine. The two judgments from 2005 referenced appellant's parole on an otherwise unidentified Ellis County case. Finally, as noted, in October 2013, appellant was sentenced to twenty years' confinement and fined $10,000 for his forgery conviction.

Appellant has had two felony convictions for drug-related offenses and the revocation of community supervision ground alleged in both those cases was his failure to abstain from the use of narcotics or controlled substances. Although ordered in 2012 to submit to a hair follicle drug test, appellant did not. At the final hearing, appellant did not explain how he intends to maintain sobriety and abstain from drug use once he is released from prison. *See In re J.R.Y.*, No. 07-15-00393-CV, 2016 Tex. App. LEXIS 3221, at *6 (Tex. App.—Amarillo Mar. 29, 2016, no pet.) (mem. op.) (noting a parent's drug use and drug-related conduct are considerations for the trier of fact in making the best interest determination).

Even though under court order since 2012, appellant never paid child support. His testimony explained that during the time he was not confined, he was "not working." By the time of the final hearing he hoped to soon be released from prison, once again on

parole, but nothing in the record showed, nor could it show, the certainty his hope would be realized.

Aside from a brief period of court-ordered visitation shortly after A.I.F.'s birth, the child has had no contact with her father. The record contains no indication she would know appellant were they to meet. B.F. acknowledged she had not shown the child the cards appellant had sent from prison, and appellant urged the court to recognize his strong desire to develop a relationship with the child. There is more to parenthood, however, than sending cards. Appellant's choices to engage in repeated criminal conduct, resulting in his current twenty-year sentence, and his choice to conceive A.I.F. and another child at virtually the same time, gave the trial court good reason to conclude appellant chose irresponsibility over the duties of parenthood.

There is evidence appellant is growing in maturity, has learned marketable advanced computer and Braille skills while in prison, looks forward to working after his release, and has intentions to pay child support. But, beyond sending cards and desiring that B.F. bring A.I.F. to visit him, appellant offered no plan to develop a father-daughter relationship where none now exists, or to assist with the care of A.I.F. He spoke not at all of any intention to establish a productive and civil relationship with the child's mother. Given the entirety of the evidence the court heard, it was not required to accept appellant's expressions of a desire to be a father to A.I.F. At the bench trial, the trial judge as factfinder was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See, e.g., In re M.A.M.,* 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied) (so stating).

11

After viewing all the evidence in the light most favorable to the best interest finding, we conclude that the evidence was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between appellant and A.I.F. was in the child's best interest. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding or was not so significant as to preclude the trial court from forming a firm belief or conviction that termination was in A.I.F.'s best interest. We therefore find the evidence was legally and factually sufficient to support the best interest finding.

## Conclusion

Having resolved each of appellant's appellate issues against him, we affirm the final order of the trial court.

James T. Campbell
Justice