

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00392-CV
_____

IN THE INTEREST OF D.D., JR., A CHILD

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 90,564-D-FM, Honorable Pamela C. Sirmon, Presiding

February 19, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, biological father of D.D., appeals the trial court's judgment by which the parent-child relationship was terminated. He contends that the evidence was legally and factually insufficient to support the trial court's findings that a predicate act or omission supported termination and that termination was in the best interest of D.D. We affirm.

*Background*

Based on reports of neglectful supervision, the Department initiated family-based services. After the parents appeared to be failing to complete their ordered services and to be continuing their drug use, the Department removed D.D. and his half-sister, A.V., from the care of appellant and the children's mother, V.O. It also sought termination of

both parents' rights. At some point later, V.O. began to complete services, address her drug abuse issues, and earned reunification with the children.

At the time of trial, both D.D. and A.V. were living with V.O. The Department's weekly visits revealed that V.O. continued to provide for their basic needs and maintain a drug-free lifestyle. Consequently, the Department abandoned its efforts to terminate V.O.'s parental rights. Ultimately, it did continue to pursue termination of appellant's parental rights to D.D.

The Department sought termination of appellant's rights based on appellant's conviction, incarceration, and inability to care for D.D. for a minimum two-year period measured from the time of the filing of the petition seeking termination. It also alleged that termination of appellant's parental rights was in D.D.'s best interest.

The record shows that appellant was convicted of manufacturing or delivering a controlled substance and sentenced to twenty years' imprisonment. He was incarcerated when D.D. was about ten months old and remained so at the time of trial. He would become eligible for parole in November 2020, but his projected release date, absent parole, would be in 2035, when D.D. is nineteen years old. The Department filed its petition seeking termination of his rights in August 2018, meaning that even if appellant were to be granted parole at the earliest possible time, he would still have been incarcerated for over two years since the filing of the petition. At the conclusion of the hearing, V.O. was awarded custody of the children, and appellant's rights to D.D. were terminated.

*Sufficiency of the Evidence*

The Texas Family Code allows a court to terminate the relationship between a parent and a child if the party seeking termination establishes (1) one or more acts or

2

omissions enumerated under § 161.001(b)(1) and (2) termination of that relationship is in the child's best interest. *In re K.M.*, No. 07-19-00073-CV, 2019 Tex. App. LEXIS 4178, at *1 (Tex. App.—Amarillo May 21, 2019, pet. denied) (mem. op.); *see* TEX. FAM. CODE ANN. § 161.001(b)(1), (2) (West Supp. 2019). Both elements must be established by "clear and convincing evidence." *See In re K.M.*, 2019 Tex. App. LEXIS 4178, at *1. That standard is met when the evidence of record "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* In reviewing whether the evidence is sufficient to do that, we apply the tests described in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014), and *In re K.V.*, No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091, at *6–8 (Tex. App.—Amarillo Oct. 11, 2016, no pet.) (mem. op.). And, in applying those tests to the finding that termination was in the child's best interest, we compare the evidentiary record to the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[1]

*Subsection Q*

Section 161.001(1)(Q) provides that a court may order the termination of parental rights if it finds by clear and convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re Caballero*, 53 S.W.3d

---

[1] The *Holley* factors are as follows: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parent seeking custody; (5) the programs available to assist the parent; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Id.* Furthermore, the evidence need not establish that all the *Holley* factors support the conclusion that termination is in the child's best interest, and the absence of evidence of some factors does not preclude the fact-finder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

391, 397 (Tex. App.—Amarillo 2001, pet. denied) (op. on reh'g). It remains true that incarceration, in and of itself, does not establish a parent's inability to care for a child. *See In re Caballero*, 53 S.W.3d at 398 (clarifying that subsection (Q) does "not abrogate the longstanding rule that termination of parental rights cannot be based on imprisonment alone"). As said by our Supreme Court in *In re H.R.M.*, 209 S.W.3d 105 (Tex. 2006), "[t]erminating parental rights under subsection Q requires that the parent be both incarcerated or confined *and* unable to care for the child for at least two years from the date the termination petition is filed. *Id.* at 109–10. However, when the party seeking termination has established that the incarcerated parent will remain in confinement for the requisite period, the parent must then produce some evidence as to how he or she would provide or arrange to provide care for the child during his or her incarceration. *In re H.B.C.*, 482 S.W.3d 696, 702 (Tex. App.—Texarkana 2016, no pet.). Once the parent satisfies that burden of production, the party seeking termination "has the burden of persuasion to show that the parent's provision or arrangement does not satisfy the parent's duty to the child." *Id.* (quoting *In re S.R.,* No. 13-15-00114-CV, 2015 Tex. App. LEXIS 5863, at *2 (Tex. App.—Corpus Christi June 11, 2015, no pet.) (mem. op.)).

It appears from the record and briefing that appellant does not challenge sufficiency of the evidence that he engaged in criminal conduct resulting in his incarceration for the requisite two-year period. He, instead, maintains that because he "agreed to have the child stay with V.O.," "no further action on his part was needed to assure the safety of his child." Appellant does concede that case law suggests there be some agreement between the incarcerated parent and the caretaker to assume parent's responsibility for the child, however.

4

Indeed, "[a]bsent evidence that the non-incarcerated parent agreed to care for the child *on behalf of* the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care." *In re H.R.M.*, 209 S.W.3d at 110 (emphasis added); *In re S.R.*, 2015 Tex. App. LEXIS 5863, at *6 (stating that there must be an agreement between the parties to care for the child before the incarcerated parent can show that he has the ability to care for the child through the support of others). Agreeing to care for the child if the incarcerated parent's rights were terminated does not meet that test. *See In re S.R.*, 2015 Tex. App. LEXIS 5863, at *12–13. Nor does evidence that someone other than the incarcerated parent voluntarily petitioned to be the child's managing conservator; that may be evidence of an agreement to support the child but not evidence to support the child on behalf of the incarcerated parent. *See In re J.G.S.*, 574 S.W.3d 101, 121 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

Here, the evidence illustrates that D.D.'s mother worked to regain and regained custody of D.D. Yet, she also expressed her wishes that appellant's rights be terminated. No mention was made that she agreed with appellant to care for the child on his behalf or to somehow fulfill or contribute to appellant's duty to care for the child. In absence of evidence indicating such an agreement, the test espoused in *H.R.M.* was not met. And, because the Department illustrated that appellant engaged in criminal conduct resulting in his incarceration for the requisite two-year period, we conclude that the decision to terminate appellant's parental rights under subsection Q has the support of both legally and factually sufficient evidence. We overrule appellant's first issue.

*Best Interest*

We now turn to the record with the *Holley* factors in mind to evaluate the evidence supporting the trial court's finding that termination of appellant's rights was in D.D.'s best

interest. Upon doing that, we encounter evidence that D.D. was only about three and a half years old at the time of trial; so, the he could not express his wishes about termination. Nonetheless, the trial court was free to consider whether the child had bonded with the members of his family in his current placement, was adequately cared for, and had spent time with appellant. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Moreover, the record contains evidence of 1) D.D. having bonded to his mother and sister, with whom he resides, 2) his needs currently being met while residing with his mother, 3) the child and appellant having never had a relationship, and 4) appellant having been incarcerated for most of D.D.'s life. On the other hand, there is no evidence that appellant ever attempted to maintain any kind of contact with his offspring. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.) (considering that appellants had "no meaningful contact with their daughter" when evaluating evidence relevant to best-interest determination).

The fact of appellant's incarceration is an additional factor bearing on the best interest of the child. *In re V.M.O.*, No. 07-09-0187-CV, 2009 Tex. App. LEXIS 9658, at *15 (Tex. App.—Amarillo Dec. 18, 2009, no pet.) (mem. op.). His sentence and the instability associated with having a parent who is incarcerated influences a child's need for permanence, which is a paramount consideration for the child's present and future physical and emotional needs. *See In re M.L.G.J.*, No. 14-14-00800-CV, 2015 Tex. App. LEXIS 2750, at *18 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.) (observing that a parent's incarceration is an appropriate consideration in best-interest analysis because the parent is "absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being").

The record also suggests that appellant has failed to complete his ordered services. While there is evidence that many services were not available to him in prison, he failed to do those services which were available. That can be said to demonstrate a lack of interest in becoming a better parent for D.D.

In sum, the evidence is legally and factually sufficient to support the trial court's finding that termination of appellant's parental rights was in the best interest of D.D. Therefore, we overrule appellant's second and final issue on appeal.

Having overruled appellant's issues, we affirm the trial court's judgment terminating appellant's relationship with D.D.

Per Curiam